Bevins et al. *v.* Cline's Administrator.

--- ◆◆◆ ---

BEVINS *et al v.* CLINE's Administrator.

HUSBAND AND WIFE—ADMISSIONS.—In an action by an administrator, on a note payable to his intestate, who, at its date, was a married woman, if failure of consideration, or other defence, is pleaded by the makers, the admissions of the payee of the note, whilst living, if they tended directly to benefit or injure herself, and only collaterally effected her husband, would be competent evidence for the defendants.

STATUTES CONSTRUED—EVIDENCE.—In section 3, of the act of 1861, (2 G. & H. p. 168,) the term, "confidential communications," seems to be limited to matters confided to attorneys, physicians and clergymen, and does not include communications between husband and wife, and the right to waive objections to their disclosure, therefore, does not apply to the latter.

Bevins et al. *v.* Cline's Administrator.

APPEAL from the *Bartholomew* Circuit Court.

PERKINS, J.—Suit by *John Prather*, administrator of the estate of *Eliza J. Cline*, deceased, against the makers of a note of the following tenor:

"$800.   On the 25th day of *December*, 1855, we promise to pay *Eliza J. Cline* eight hundred dollars, waiving relief laws of *Indiana*, for value received, this June 29th, 1854.

"C. BEVINS,

"L. H. SHUMWAY."

The defendant answered, setting up a failure of consideration, in this, that *John Cline* and *Eliza J. Cline*, who was *John's* wife, were the equal owners, as joint tenants, of a tract of land; that they united in the sale of it to *Charles Bevins*, one of the makers of the note sued on, (*Shumway* being his surety,) and made a joint deed for the same; that, as the consideration of the sale and conveyance, *Bevins* gave 800 dollars cash in hand, and the note in suit, which, for certain private personal reasons, the answer alleges, was made payable to *Eliza J.*, the wife of *John*, though it avers the same to be the joint property of the two.   It further avers that, at the same time, and as a part of the contract, said *John* and *Eliza J. Cline* executed to said *Bevins* their joint bond of indemnity against the failure of the title to any of the land deeded; and that, in fact, *John Cline's* interest in the land was subsequently sold on execution, &c.   *Bevens* v. *Prather*, 13 Ind. 392.

The plaintiff replied:

1. The general denial of the answer.

2. "That, at the time of said sale and conveyance of the land to *Bevins*, said *John Cline* and *Eliza J. Cline*, with the knowledge and consent of said *Bevins*, made an equal division of the proceeds of the sale, said *John* taking and receiving,

as and for his share, and interest in said land, eight hundred dollars in cash, being half of the price of the land, and said *Eliza J. Cline* taking and receiving, with the consent of her husband, said note for eight hundred dollars, as and for her share, being the remaining half of the price of the land, said note being taken as her separate property," &c.

A demurrer to this reply was overruled, and exception taken.

The cause was tried by the Court, who found for the plaintiff the amount of the note and interest.

A motion for a new trial was denied. The evidence is in the record. It consisted of the note, the deed from *Cline* and wife to *Bevins*, a judicial record, and certain parol evidence. The judicial record was the judgment of avoidance of *Bevins'* title as far as derived from *John Cline*. The deed was the joint warranty deed of *John* and *Eliza J.* The parol evidence was this; *Reason Prather* testified that the price of the land in question was 1,600 dollars; that 800 dollars was paid to *John* for his interest, and the note of 800 dollars was given to *Eliza J.* for her interest. *Bevins* assented to such apportionment of the purchase-money. *Walter Prather* testified that *Eliza J.* left the note with him for collection, taking his receipt in her name for it; that after her death he handed it over to her administrator.

On the trial, the defendants offered themselves as witnesses, to prove the truth of the matters set up in their answer, but the Court held them incompetent under the code. They then offered to prove, by a competent witness, the admissions made in her lifetime, by *Eliza J. Cline*, the payee of the note sued on, touching those matters, "but the Court rejected the evidence of said admissions, on the ground that the said *Eliza J.* was the wife of said *John Cline*, and was, for that reason, incompetent," &c.

Preliminary to a discussion of the questions to be decided, a

brief reference to some of the modes of ownership of property may aid us in obtaining clear and exact ideas of the points involved. Property may be owned absolutely, may be owned in trust, may be owned in severalty, and may be owned jointly. There were four kinds of joint tenancy at common law, viz: in common, in parcenary, in joint tenancy, and in tenancy by entireties. In this State, three of these kinds of joint tenancy may exist. Our code enacts:

"Sec. 7. All conveyances and devises of lands, or of any interest therein, made to two or more persons, except as provided in the next following section, shall be construed to create estates in common and not in joint tenancy, unless it shall be expressed therein that the grantees or devisees shall hold the same in joint tenancy, and to the survivor of them, or it shall manifestly appear, from the tenor of the instrument, that it was intended to create an estate in joint tenancy.

"Sec. 8. The preceding section shall not apply to mortgages, nor to conveyances in trust, nor when made to husband and wife; and every estate vested in executors, or trustees, as such, shall be held by them in joint tenancy." 1 G. & H. 259.

It had often—prior to 1852—been decided, in other States, that the statutes of such States, converting joint tenancies into common, did not extend to tenancies created by joint conveyances to husband and wife, and our statute, enacted subsequently to those decisions, expressly excepts such tenancies, leaving them at as common law. See 5 Mass. Rep. 521; 16 John. Rep. 110; 5 Halst. 42; 3 Rand. 179; 2 Black. (Shars. ed.) p. 182, note 10.

At common law, if a conveyance be made jointly to a man and woman, who are not married, they take by moieties, as joint tenants, and either can sever such joint tenancy by a conveyance of his or her moiety; but if a conveyance of land be made to a man and woman, who are then husband and wife, they take as joint tenants by entireties, not by moieties;

Bevins et al. *v.* Cline's Administrator.

they are seized *per tout* and not *per my*. Each, as well as both, is entitled to the use of the whole. Neither can sever the joint estate by his own act, as he can in case of an ordinary joint tenancy, but both must unite in the deed to effect a conveyance of any estate in any part of the whole. 2 Black. *supra*. In the case of *Stucky* v. *Keefe's Ex'rs*, 2 Casey (26 Penn. St. Rep.) 397, decided in 1856, the authorities on this point are collected. Nor, it would seem, could the separate interest of either be sold on execution. Indeed, there is no separate interest. See *Cox* v. *Wood*, 20 Ind. 54.

In a case, then, where husband and wife held real estate by a conveyance, made to them while married, a sale and conveyance by them of such estate would necessarily be joint, and the consideration joint and not several, and not severable, as consideration for the sale, though it might be divided afterwards. The evidence in this case does not show the origin of the title of *John* and *Eliza J. Cline.*.

But in case of an ordinary joint ownership of property, as of a horse or a farm, we take it that each joint tenant may separately sell and convey his share for such separate consideration, resting on his own title, as may be agreed upon, or the law will settle; and, also, if such course is adopted, the joint tenants may unite in a joint sale and conveyance upon a joint consideration, resting upon the assumed joint title of all; and, in such a case, the subsequent division of the consideration among the sellers would not make it several as to the purchaser. As to him, the question would be, was the consideration several or joint, in the sale? or, had it been made so, as to the liabilities of the parties, by his agreement since. From what has been said, it appears to be questionable whether the reply to the second paragraph of the answer, in this case, was sufficient, supposing the answer to be good. But as the judgment must be reversed, and the case go back upon another ground, and the pleadings may be remodeled

before another trial, we will pass to the rulings of the Court upon the questions of evidence.

There can be no doubt that the evidence offered was pertinent and material. Could it be got before the Court in the mode attempted?

We may observe that a wife is not bound by the covenants in her deed. Our code enacts:

"Sec. 6. The joint deed of the husband and wife shall be sufficient to convey and pass the lands of the wife, but not to bind her to any covenant therein." 1 G. & H. p. 258.

But this fact does not go to the question of consideration. A statute of this State, passed in 1861, (2 G. & H. 168,) by section 2, makes, as the general rule, all white persons, of competent age, witnesses. Section 3 declares the limitations and exceptions to the general rule, and is as follows:

"Persons insane at the time of examination, children under ten years of age, and incapable of properly understanding the facts about which they are examined; husband and wife as to matters for or against each other, or as to communications made to each other during marriage; attorneys at law as to confidential communications from a client, or advice given to such clients; physicians as to any matters confided to them in the course of the duties of their profession; clergymen concerning any confessions made to them in the course of discipline enjoined by the church, shall not, in either case, be included in the second section of this act, or be competent witnesses, unless with the consent of the party making such confidential communications: *Provided,* That where a negro, Indian, or person excluded on account of mixed blood is a party to a cause, his opponent shall also be excluded: *And provided further,* That in all suits where an executor, administrator, or guardian, is a party in a case where a judgment may be rendered, either for or against the estate represented by such executor, administrator, or guardian, neither party

Bevins et al. *v.* Cline's Administrator.

shall be allowed to testify as a witness, unless required by the opposite party, or by the Court trying the cause, except in cases arising upon contracts made with the executor, administrator, or guardian of such estate."

These exceptions are, to the extent of them, mainly a retention of common law rules.

1. Insane persons are incompetent at common law.

2. So, children under, &c., and incapable, &c.

3. So, husband and wife, &c.

4. So, attorneys, &c., as to confidential communications.

And as to this fourth specification, it may be observed, that the term, "confidential communications," as used in the section, seems limited to matters confided to attorneys, physicians, and clergymen; and, if so, the authority to waive objection to their disclosure, does not extend to matters between husband and wife. See *Gee* v. *Lewis*, 20 Ind. 149.

5. As to executors, &c., mentioned in the second proviso, the objection can be waived "by the opposite party;" and "the Court trying the cause," in its discretion, and of its own volition, may require both parties to testify.

Was, then, the evidence offered and rejected in this case, admissible at common law?

It will be observed, that it was not sought by the evidence to disprove the capacity of the plaintiff, and to prove the capacity of the husband to sue on the cause of action. The record presented no such issue. The capacity of the plaintiff to sue was admitted by the pleadings. The evidence was to go to the consideration of the note, and was rejected because "said *Eliza J.* was the wife of *John Cline.*" The evidence offered consisted of admissions made by the wife in her lifetime. It does not appear whether her husband was living or dead. If the wife could have been called to prove the matters offered to be proved in this case, had she been living, then it was competent to prove her admissions of those mat-

ters, she being dead. 1 Green. Ev. sec. 341. While it is the general rule that husband and wife can not be witnesses for or against each other, it is also a general rule, at least, under the code, that they may be witnesses for and against themselves. *Palmer* v. *Henderson*, 20 Ind. 297. There are exceptions to the rule, even in civil cases, that they can not be witnesses for or against each other. If a husband makes his wife his agent, she may be a witness for or against him, as to acts done within the scope of the agency; at all events, her declarations, concurrently with, and explanatory of, such acts, will be evidence for or against him. So, they may be, if made in his presence. See *Casteel* v. *Casteel*, 8 Blackf. 290. But in this case, we think the admissions offered, as having been made by *Mrs. Cline*, operated against herself, and not against her husband. He was not a party to the suit, and how could the result of it directly have benefited or injured him? *Mrs. Cline's* admissions would, we may suppose, have tended to secure a judgment in her favor, or against her, in the particular suit. Suppose they had tended to secure a judgment in her favor, then the testimony would have operated in her own behalf, not for her husband; because the judgment would have been hers, not his. Suppose they had operated to defeat a judgment in her favor, then they would have been against her, not her husband; for if a judgment had been recovered, it would not have been his.

But, it may be said, if the judgment had been for the defendant in this case, the husband of *Mrs. Cline* might have been sued for a part of the consideration—800 dollars—which he had received. Suppose this to be true, as he was not a party to this suit, the record could not be used in a suit against him, nor could the evidence given on the trial. In such case, where the testimony of husband and wife affects them respectively, only collaterally, it is not inadmissible. See the cases collected in 2 G. & H. p. 170; *The Boone County*

*Bank* v. *Wallace*, 18 Ind. 82; 1 Greenl. Ev. sec. 342; 1 Philip's Ev. 4 Am. ed. p. 84, *et seq.*

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded for further proceedings.

*Martin M. Ray*, for the appellants.

*S. Stansifer, C. E. Walker*, and *Geo. W. Richardson*, for the appellee.