

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-2589
Re: Whether or not a State inheritance tax is due on property acquired by survivorship in case of a joint tenancy.

This is in answer to your request for an opinion on the liability of the estate of Harry E. Morrow for State inheritance taxes. Your letter reads in part as follows:

"Harry E. Morrow died on the 12 day of January, 1940, . . . . Included among the assets of his estate was a list of various stocks having a quoted value of $38,520.12, as of the date of death.

"The deceased inherited this list of stocks from his father in 1932, who was a resident of the State of Pennsylvania. In due course and in the proper manner the stock certificates were returned to the various corporations which had issued them and certificates for said stocks were re-issued to Harry E. Morrow and Gertrude M. Morrow as joint tenants, with right of survivorship, and not as tenants in common."

We are further advised that Harry E. Morrow and Gertrude M. Morrow were husband and wife during all of the time involved, and that no consideration was paid to Mr. Morrow or anyone else for having the stock re-issued to him and his wife as joint tenants.

Honorable George H. Sheppard, Page 2,

Your question is what part of this stock, if any, is subject to the State inheritance tax by virtue of Mr. Morrow's death.

When this stock was inherited by Mr. Harry E. Morrow from his father in 1932 it became his separate property, and his wife had no interest in it at that time. Article 4613 of the Revised Civil Statutes of Texas; Townsend v. Chaillett, (Civ. App.) 45 S. W. 2nd 354.

His act of having the stock re-issued to him and his wife as joint tenants appears to have been purely voluntary on his part and we understand that he received no consideration. Whatever interest Mrs. Gertrude M. Morrow received in the stock was a gift from Mr. Morrow. One spouse has the power and authority in Texas to give his or her separate property, or an interest therein, to the other spouse. 23 Tex. Jur. 70; Speer's Law of Marital Rights in Texas, 3rd Ed., pp. 179-186.

Let us now look at the nature of "joint tenancies." We find a definition of joint tenancy in 14 American Jurisprudence 79 as follows:

"An estate in joint tenancy is one held by two or more persons jointly, with equal rights to share in its enjoyment during their lives, and having as its distinguishing feature the right of survivorship or jus accrescendi, by virture of which the entire estate, upon the death of any of the joint tenants, goes to the survivors, and so on to the last survivor, who takes an estate of inheritance free and exempt from all charges made by his deceased cotenants. . ."

By virtue of the holding of the Court of Civil Appeals at Beaumont in the case of Chandler v. Kountze, (1939) 130 S. W. (2d) 327 (writ refused), it is now established that a joint tenancy can legally exist in Texas. Prior to the holding in that case there was some confusion as to the meaning of Article 2580 of the Revised Civil Statutes of Texas, which reads as follows:

"Art. 2580. (2471) (1698) (1655) Jus accrescendi abolished.

"Where two or more persons hold an estate, real, personal or mixed, jointly, and one joint

Honorable George H. Sheppard, Page 3.

> owner dies before severance, his interest in said
> joint estate shall not survive to the remaining
> joint owner or joint owners, but shall descend
> to, and be vested in, the heirs or legal represen-
> tatives of such deceased joint owner in the same
> manner as if his interest had been severed and
> ascertained. (Act March 18, 1848, p. 129; P. D.
> 3429; G. L. vol. 3, p. 129.)"

See the cases of Ross v. Armstrong, 25 Tex. Supp. 355, and
Peterson v. Kirk, 73 Tex. 524, 11 S. W. 534. However, the
Chandler v. Kountze case held that Article 2580 put an end
to joint tenancy and survivorship as a matter of law or by
operation of law, but that a joint tenancy could be created
in Texas by express contract.

As we understand the facts in this case, all of
the parties contracted that Mr. and Mrs. Morrow would own
this stock as joint tenants. The fact that they were hus-
band and wife would not prevent the arrangement from being
a joint tenancy. Engelbrecht v. Engelbrecht, 323 Ill. 208,
153 N. E. 827. The nature of the property is immaterial
because "at common law joint tenancies, with the incident
of survivorship, obtained as to both real and personal prop-
erty." Johnston v. Johnston, 173 Mo. 91, 73 S. W. 202, 61
L. R. A. 166, 96 Am. St. Rep. 486.

It definitely appears that this arrangement under
which this stock was owned was a joint tenancy. As to whether
or not it is subject to the State inheritance tax by virtue
of Mr. Morrow's death depends upon the construction to be
placed upon the Texas inheritance tax statutes. The statute
that designates the property and the conditions under which
it is subject to the State inheritance tax is Article 7117
of Vernon's Annotated Revised Civil Statutes of Texas, which
reads as follows:

> "All property within the jurisdiction of
> this State, real or personal, corporate or in-
> corporate, and any interest therein, including
> property passing under a general power of ap-
> pointment exercised by the decedent by will,
> including the proceeds of life insurance to the
> extent of the amount receivable by the executor

Honorable George H. Sheppard, Page 4

or administrator as insurance under policies
taken out by the decedent upon his own life, and
to the extent of the excess over Forty Thousand
Dollars ($40,000) of the amount receivable by all
other beneficiaries as insurance under policies
taken out by the decedent upon his own life,
whether belonging to inhabitants of this State
or to persons who are not inhabitants, regardless
of whether such property is located within or with-
out this State, which shall pass absolutely or in
trust by will or by the laws of descent or distri-
bution of this or any other State, or by deed,
grant, sale, or gift made or intended to take ef-
fect in possession or enjoyment after the death
of the grantor or donor, shall upon passing to or
for the use of any person, corporation, or associa-
tion, be subject to a tax for the benefit of the
State's General Revenue Fund, in accordance with
the following classification. Any transfer made
by a grantor, vendor, or donor, whether by deed,
grant, sale, or gift, shall, unless shown to be
contrary, be deemed to have been made in contem-
plation of death and subject to the same tax as
herein provided, if such transfer is made within
two (2) years prior to the death of the grantor,
vendor, or donor, of a material part of his estate,
or if the transfer made within such period is in
the nature of a final distribution of property and
without adequate valuable consideration." (Under-
scoring ours)

There has been no Texas appellate court decision
on this question; and from our investigation we find that
there is great confusion among the decisions in the other
states in which the question of liability for inheritance
taxes on joint tenancies has been passed on. It seems that
a majority of the courts in other states have held that un-
der inheritance tax statutes that fix a tax on the transfer
of property "by will" or "by the laws of descent or distri-
bution" there is no tax liability in respect of property ac-
quired by survivorship in case of a joint tenancy. 61 Cor-
pus Juris. 1649; Attorney General v. Clark, 222 Mass. 291,
110 N. E. 299, L. R. A. 1916 C 679; In re Leach's Estate,
282 Pa. 545, 128 Atl. 497. The reason for such holdings
can be explained by quoting from the case of Re McKelway,
221 N. Y. 15, 116 N. E. 348, L. R. A. 1917 E 1143, as fol-
lows:

Honorable George H. Sheppard, Page 5

>". . . the survivor takes, not under the
laws regulating intestate succession, but under
the conveyance or instrument by which the ten-
ancy is created."

This theory is more fully explained in the case of Wilken
v. Young, 149 Ind. 1, 41 N. E. 68, as follows:

>". . . Tenants of this kind are said to
hold individually and jointly, having one end
the same interest, accruing through one and
the same conveyance, commencing at the same
time, and held by one and the same possession.
Upon the death of one joint tenant, there be-
ing no severance in the estate, his entire in-
terest is cast upon the survivor or survivors,
to the exclusion of the inheritance of the
same by his heirs. The interest of the survi-
vor in the realty is consequently increased by
the extinguishment of the interest of the tenant
deceased. It is settled in law that a joint
tenant may alienate or convey to a stranger his
part or interest in the realty, and thereby de-
feat the right of the survivor. Tied. Real.
Prop. 3 238; 1 Washb. Real Prop. 682, cl. 22;
4 Kent, Comm. 460; 1 Prest. Est. 136; Bevins
v. Cline, 21 Ind. 40; 6 Am. & Eng. Enc. Law,
892; 11 Am. & Eng. Enc. Law, 1092; Duncan v.
Forrer, 6 Bin. 193. In the ancient language of
the law, joint tenants were said to hold per my
et per tout, or, in plain words, 'by the moiety
or half and by all'; the true interpretation
of this phrase being that these tenants were
seised of the entire realty for the purpose of
tenure and survivorship, while for the purpose
of immediate alienation each had only a particu-
lar part or interest."

If the Texas inheritance tax statute fixed a tax
only on the transfer of property "by will" or "by the laws
of descent or distribution" it may be that under the theory
of the above cited cases there would be no tax due in this
case; but, the Texas statute also fixes a tax on the trans-
fer of property by "gift made or intended to take effect in
possession or enjoyment after the death of the . . . donor",
and it is our opinion that by virtue of that provision one-
half of the value of this stock in this particular case is

Honorable George H. Sheppard, Page 6

subject to an inheritance tax for the reasons hereinafter explained.

As stated above, when this stock was first inherited by Harry E. Morrow from his father it became his separate property, and his act whereby without any consideration he caused the creation of a joint tenancy in which he and his wife were joint tenants was a gift as far as the interest obtained by his wife was concerned. In other words, whatever interest the wife, Gertrude M. Morrow, received was a gift. What interest did she receive at the time of the creation of the joint tenancy? On the question of what interest a joint tenant has 33 Corpus Juris 909 says:

"The shares or interests of joint tenants are presumed to be equal, although the contrary may be shown by proof. . ."

In the case of Greenwood v. Bennett, (Ala.) 95 So. 159, the court said:

"In the language of the old law, the nature of joint tenancy is where the owners hold 'per my et per tout.' That is to say, for the purpose of tenure and survivorship each is the holder of the whole; for the purpose of alienation, each has his own share, which is presumed to be equal. 5 M. A. L. p. 245 § 311; 2 Black Comm. p. 180; Williams, Real Property (6th Ed.) p. 132."

We think it is clear that at the time of the creation of the joint tenancy prior to Mr. Morrow's death Mrs. Morrow received by gift a one-half interest in the stock, that is she shared equally with her husband. She having come into that half interest by gift prior to his death, it was not subject to an inheritance tax.

What about the other half interest, that is, the interest retained by the husband when he created the joint tenancy? Upon the death of the husband that interest descended to the wife. In 33 Corpus Juris 903 it says:

"The distinct characteristic of a joint tenancy is that, upon the death of one of the joint tenants, there being no severance, his interest descends to the survivor or survivors, and at length to the last survivor. Therefore, whenever

Honorable George H. Sheppard, Page 7

> a joint tenancy exists, whether at common law
> or under the statutes, on the death of one of
> the joint tenants and in the absence of stat-
> ute otherwise, the survivors take the whole es-
> tate, . . ."

It may be presumed that the husband knew that the law was
such that when he caused to be created the joint tenancy
with him and his wife as joint tenants that the one-half
interest retained by him would descend to his wife immedi-
ately upon his death. We must remember that he received
no consideration. Clearly this one-half interest was a
gift "made or intended to take effect in possession or en-
joyment after the death of the . . . donor." Therefore,
it comes within the words of Article 7117 and is subject
to the tax.

The same holding that we have made here was made
by the Supreme Court of New York in 1914 in the case of In
re William B. Dana Company, 164 N. Y. App. Div. 44, 149 N.
Y. Supp. 417 (affirmed in 214 N. Y. 710, 108 N. E. 1112).
In that case William B. Dana owned some stock in a corpora-
tion, and he had the stock re-issued to him and Jacob Seibert,
Jr., as joint tenants. No consideration was paid for this
change in ownership. ". . . the inducing cause of the gift
was services which Seibert had rendered to William B. Dana
Company . . .". One of the provisions of the New York inher-
itance law at that time provided: "A tax shall be and is
hereby imposed upon the transfer of any . . . property . . .
or any interest therein . . . to persons . . . 4. When the
transfer is of intangible property, or of tangible property
within the State, . . . by deed, grant, bargain, sale or _gift
. . . intended to take effect in possession or enjoyment at_
or after such death." The Supreme Court of New York said:

> ". . . we think that the relation of the
> parties was that of donor and donee, and not a
> contractual relation for a valuable considera-
> tion.

> "We do not think it is necessary to deter-
> mine exactly the character of title or ownership
> as between themselves of joint owners of personal
> property, nor whether this was a gift inter vivos
> nor whether it was made in contemplation of death.
> It might have been the former, and not the latter,
> and still the ultimate succession be taxable.
> Christie on Inheritance Taxation, 697. Certainly,

while Dana lived, the gift by him to Seibert of this stock did not take effect in complete possession or enjoyment, nor was it intended that it should. The intention was that such gift should take such effect only after Dana's death and by reason thereof. When the stock was transferred, Seibert may have become 'beneficially entitled in expectancy' to such property, provided he survived Dana, but not otherwise, and it was Dana's intent that he should thus become entitled, and only to that extent. It was such gift, and such only, that Dana made to him. Seibert's 'right of succession,' therefore, became effective when Dana died, and not before. A father in robust health may make a gift to his son of property, reserving to himself a life interest therein. This would be a gift to take effect in enjoyment after the father's death, and would be a taxable transfer. In re Green, 153, N. Y. 223, 47 N. E. 293."

It will be noticed that the Texas statute (Article 7117) includes a "gift made or intended to take effect in possession or enjoyment after the death of the grantor," and the New York statute at that time included a "gift . . . intended to take effect in possession or enjoyment at or after such death." It is apparent that these statutes are practically the same.

A note in 28 Harvard Law Review 437 discusses the case of In re William B. Dana Company, supra, and approves the holding in the case with this statement: "The principal case (Dana case), therefore, is clearly correct. . ."

We are not passing on whether or not there would be an inheritance tax due under the Texas law in respect of property acquired by survivorship in case of a joint tenancy if consideration had been paid for its creation, such as in a case where a third party had conveyed property for consideration to two or more persons as joint tenants, or where one person paid another person a consideration to create a joint tenancy with said two persons as joint tenants. We are only passing on this case in which the survivor, Gertrude M. Morrow, succeeded to her interest by what we believe to be a gift from Harry E. Morrow.

Honorable George H. Sheppard, Page 9

For the reasons stated above, it is our opinion that the one-half interest which descended from the husband to the wife upon the husband's death was subject to a State inheritance tax. That interest would be measured by taking one-half of the value of all of the stock in question at the time of Harry E. Morrow's death.

We are enclosing with this opinion your file on this question.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Cecil C. Rotsch
Assistant

CCR:ew
Encl.

APPROVED SEP 10, 1940

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN