Raymond and Marian CONNORS, Husband and Wife; and Michael and Gaye Lindsley, Husband and Wife, Appellants (Defendants Below),

v.

James and Mary Ann AUGUSTINE, Husband and Wife, Appellees (Plaintiffs Below).

No. 3–1179A318.

Court of Appeals of Indiana, Third District.

July 28, 1980.

John F. Hoehner, James A. Johnson, Johnson & Steele, Valparaiso, for appellants.

Herbert K. Douglas, Valparaiso, for appellees; Douglas, Douglas & Douglas, Valparaiso, of counsel.

STATON, Judge.

Plaintiffs below, James and Mary Augustine (Augustine), brought an action to quiet the title in themselves of a disputed strip of land. Defendants below, Raymond and May Connors and Michael and Gaye Lindsley (hereinafter Lindsley), brought this appeal when the trial court, without intervention by a jury, decided for Augustine. Lindsley raised the following issues for our review.

(1) Whether there was sufficient evidence to support the trial court's determination; and,

(2) Whether the trial court erred in not requiring the payment of taxes as an element of adverse possession.

We affirm.

## I.

### Evidence

Augustine purchased property in 1970 (hereinafter referred to as the "Augustine farm") which lay to the immediate south of the Lindsley property. The common boundary between the Augustine farm and the Lindsley property was bordered by a fence. A survey made in 1973 made it quite clear—and it was not disputed at the trial—that the fence was on the Lindsley property

well to the north of the record title boundary. The survey established that approximately sixteen acres of land lay to the south of the fence and to the north of the record title boundary.

Augustine brought a quiet title action to establish a new record title boundary at the fence line. Augustine's chief witness, Anthony Trully, testified that he was familiar with the Augustine farm from 1949 to 1970. He also testified that there was only one fence on the northern boundary of the Augustine farm and that the property had been farmed up to that fence. Lindsley offered no evidence except that Lindsley was record title owner of the disputed sixteen acres.

## II.

### Sufficiency of Evidence

■ Lindsley's first allegation of error is that there was not sufficient evidence to support the trial court's judgment. Besides arguing generally that not all elements of adverse possession were met, Lindsley argues specifically that Augustine failed to establish continuous possession of the disputed sixteen acre strip of land. In essence, however, Lindsley's argument seeks for this Court's reweighing of the evidence. It is a well established rule that upon appeal this Court will not weigh the evidence nor resolve issues of credibility, but rather, will view only the evidence most favorable to the appellee together with all the logical inferences therefrom. *Department of Commerce v. Glick* (1978), Ind.App., 372 N.E.2d 479; *Utica Mutual Insurance Co. v. Ueding* (1977), Ind.App., 370 N.E.2d 373.

■ It is a well settled principle that a record title may be defeated by adverse possession through the operation of the statute of limitations where the possession has been actual, visible, notorious, exclusive, under a claim of ownership, hostile to the owner of the record title, and continuous for the full period of the statute. *E. g.,*

*Marengo Cave Co. v. Ross* (1937), 212 Ind. 624, 10 N.E.2d 917; *Triplett v. Triplett* (1963), 135 Ind.App. 302, 193 N.E.2d 662; *Cooper v. Tarpley* (1942), 112 Ind.App. 1, 41 N.E.2d 640. The statute of limitations for the recovery of land in Indiana is ten years. IC 34–1–2–2(6) (Burns Code Ed.); *Kline v. Kramer* (1979), Ind.App., 386 N.E.2d 982.

Augustine's witness, Trully, testified that he was familiar with the Augustine farm for the period from 1949 to 1970. Trully testified that he and his dad and his uncle (his uncle then owning the Augustine farm) farmed the property from 1949 to 1954. He testified further that there was just one fence on the northern boundary of the Augustine farm and that the land was farmed from fence to fence. Trully went into the military service and could not, therefore, testify to the use of the property in 1955 and 1956. Trully did testify, however, that upon his return in 1957, there was no change in the usage of the property. Finally, Trully testified that up to the time Augustine bought the property (1970), the Augustine farm was farmed from fence to fence.

■ Clearly, there was sufficient evidence to support a determination that Augustine's predecessor in title had—in the disputed sixteen acre strip of land—possession that was actual, visible, notorious, exclusive, under a claim of ownership, hostile to the owner of record title and continuous for a full ten year period of time. Thus, title to the sixteen acres vested in Augustine's predecessor; *see Kline, supra,* and was, therefore, transferred to Augustine. *See Echterling v. Kalvaitis* (1955), 235 Ind. 141, 126 N.E.2d 573.

## III.

### Tax Requirement

Lindsley's second contention is that the trial court erred in not requiring the payment of taxes—as per IC 32–1–20–1 (Burns Code Ed.) [1]—as a requisite element of ad-

1. IC 32–1–20–1 (Burns Code Ed.) provides: "Hereafter in any suit to establish title to lands or real estate no possession thereof shall be deemed adverse to the owner in such manner as to establish title or rights in and to such land or real estate unless such adverse

 

verse possession in a quiet title action involving a boundary dispute. As recognized by Lindsley, the facts of this case are nearly identical to the cases of *Echterling, supra,* and *Kline, supra.* Lindsley asks this Court to overrule both cases. We decline to do so and, in fact, specifically re-affirm the soundness of both cases.

■ As in this case, in *Echterling* and in *Kline* a fence was erected over the boundary line and all the elements of adverse possession had been established—except for the payment of taxes. As succinctly stated by this Court in *Kline, supra*:

> "The holding in *Echterling, supra,* emphasizes the Indiana view of adverse possession and the practical need to cure defects in the recording of property descriptions and other defects of title. In circumstances where boundary disputes arise due to the erection of fences or other structures, the supplementary element of tax payments is inapplicable, since it does not serve as notice to the recorded titleholder that the identical described land on the tax statement is being adversely claimed by another. The erection of the fence or other structure becomes the notice to the adjoining titleholder."

386 N.E.2d 990. Therefore, the trial court committed no error in not requiring Augustine to have paid the property taxes as an element of adverse possession in this boundary dispute.

We affirm.

GARRARD, P. J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent.

The majority opinion and the trial court erred in construing IC 1971, 32–1–20–1 as not applying to situations involving boundary line adverse possession actions. They

> possessor or claimant shall have paid and discharged all taxes and special assessments of every nature falling due on such land or real estate during the period he claims to have possessed the same adversely: Provid-

arrive at this position by citing *Echterling v. Kalvaitis,* 235 Ind. 141, 126 N.E.2d 573. In *Echterling* the Court determined that since tax duplicates are sketchy and inaccurate that trial court did not err in finding compliance with IC 1971, 32–1–20–1. However, in the case before us not only were the tax duplicates placed in evidence but oral testimony from the township assessor established that the appellants had paid taxes on the disputed land and that the appellees had not.

In *Kline v. Kramer,* Ind.App., 386 N.E.2d 982 only tax duplicates established the payment of taxes as in *Echterling.*

I would reverse the judgment of the trial court.

> ed, however, That nothing in this act [section] shall relieve any adverse possessor or claimant from proving all the elements of title by adverse possession now required by law."